**FILED**
**May 13, 2025**
**02:24 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT GRAY

| | | |
|---|---|---|
| **MICHAEL VANDERFORD,** | ) | **Docket No: 2023-02-6806** |
| **Employee,** | ) | |
| **v.** | ) | |
| **E.S. DOCKERY COMPANY,** | ) | **State File No: 73842-2023** |
| **Employer,** | ) | |
| **And** | ) | |
| **BUILDERS MUTUAL INSURANCE** | ) | **Judge Brian K. Addington** |
| **COMPANY,** | ) | |
| **Carrier.** | ) | |

---

## COMPENSATION ORDER

---

At a compensation hearing on April 28, 2025, Ms. Vanderford requested benefits for her children from her ex-husband's death due to a heart attack.[1] E.S. Dockery contended the heart attack did not arise out of the employment. The Court finds the work caused his heart attack and holds Ms. Vanderford's children are entitled to the requested benefits.

### History of Claim

*Background Information*

Mr. Vanderford was a professional flooring installer. He worked on projects with E.S. Dockery for over 20 years and paid for his own worker's compensation insurance under its policy. He worked hard and finished jobs early or on time.

His job required him to remove old flooring and install new flooring. Removing old flooring includes scraping up any adhesive with a machine or with hand tools, so that fresh adhesive can be applied.

---

[1] The Court allowed the parties to submit supplemental briefs, which they did on May 6.

Mr. Vanderford's family consisted of his former wife Sabrina Vanderford, their biological son, Michah Vanderford, and her daughter, Bryelynn Taylor. Although Mr. Vanderford had been married to Ms. Vanderford since 2015, they divorced in 2020 so she could file bankruptcy without affecting his credit. After the divorce, they continued to live together with Bryelynn and Michah. Bryelynn's biological father played no role in her life. She thought Mr. Vanderford was her father and called him dad.

Mr. Vanderford paid all the bills in the household, did all the grocery shopping for the family, cooked their meals, and supported himself, his ex-wife, and the two children. Although Ms. Vanderford worked, she did not pay the bills.

E.S. Dockery employed Mr. Vanderford to remove old and install new flooring at Charity Baptist Church in Blountville, Tennessee. Mr. Vanderford started the job and was ahead of schedule. The day before his death, Ms. Vanderford needed him to drive her to a doctor's appointment. He called his supervisor at E.S. Dockery and informed him that he had a headache, was not feeling well, and would not work that day. Instead, he drove Ms. Vanderford to the appointment and took the children to and from school. That evening, the family ate pizza and watched a movie.

*The Accident*

On August 25, 2023, Mr. Vanderford was sweeping up old carpet adhesive in the church, which was a normal work activity for someone who removes and installs flooring. As he was sweeping, he suddenly stopped and sat down for a few seconds. He stood up and immediately fell to the floor. He managed to stand up and rushed as best he could outside the church to his van. Other workers noticed Mr. Vanderford's distress and called 9-1-1. Video footage shows he was visibly shaken. He poured a bottle of water on his head, but unfortunately, he died as he was sitting in the front seat.

The same day, soon after learning of Mr. Vanderford's death, Ms. Vanderford received a call from Kevin Brown, a forensic investigator who needed information about Mr. Vanderford's health for the autopsy. Ms. Vanderford told him that Mr. Vanderford did not take medications, and he had a knot in his neck removed in the last year. He did not use tobacco or alcohol, but he did occasionally use marijuana, and he had no recent accidents. Ms. Vanderford also said that Mr. Vanderford complained of a severe headache, dizziness, and chest tightness for the last week but did not seek medical attention.

Mr. Brown did not keep his handwritten notes of their conversation but created a report on August 28, 2025. As to the symptoms Mr. Vanderford was having the week

before his death, Ms. Vanderford testified that she only told Mr. Brown about the headaches.[2]

*The Expert Proof*

Ms. Vanderford's expert was cardiologist Dr. Arvindh Kanagasundram. He completed both medical school and his cardiology residency at Vanderbilt, where he has taught for 12 years. He is board-certified in cardiology and electrophysiology and spends over 80% of his time evaluating and treating patients with heart arrythmias and coronary artery blockages.

Dr. Kanagasundram reviewed the forensic and investigative reports, spoke to Ms. Vanderford, and reviewed videos of the accident, the depositions of witnesses who saw the accident, and expert treatises on heart problems.

The doctor wrote that Mr. Vanderford exerted himself at work, appeared to be short of breath, and was sweating immediately before his death. He also noted that Mr. Vanderford had coronary artery disease, an enlarged heart, and evidence of a previous heart attack. However, Mr. Vanderford's condition was stable before the accident. To a reasonable degree of medical certainty, Dr. Kanagasundram testified Mr. Vanderford's death was more than 50% caused by his work activity that morning and his work activities more than 50% caused an aggravation of his preexisting heart condition.

E.S. Dockery retained cardiologist Dr. Claro Diaz, who attended Louisiana State University medical school and a cardiology residency at the University of Texas Galveston. He is board-certified in cardiovascular medicine and interventional cardiology. He primarily practices in cardiology, but he also trains cardiology fellows occasionally. Dr. Diaz reviewed the same information as Dr. Kanagasundram but did not speak to Ms. Vanderford.

Dr. Diaz testified that Mr. Vanderford's activities in the video of the accident were not vigorous. He agreed with Dr. Kanagasundram that Mr. Vanderford experienced ischemia-triggered arrythmia but attributed over 90% of the cause of his heart attack to severe coronary artery disease.

Dr. Diaz stated that he sees cases like this every week. Due to Mr. Vanderford's blockages, he was having unstable symptoms that he did not recognize, and he died from

---

[2] Although E.S. Brown submitted the investigative report recording his conversation with Ms. Vanderford and others without objection, this is a business record. The Court considers all the witness-supplied information in the report hearsay. Ms. Vanderford is not a party to this case; she is a representative that filed on behalf of her children. Although the report also could be used to impeach Ms. Vanderford's credibility, the totality of the facts does not support her lack of credibility on her denial of this statement about Mr. Vanderford's symptoms the week before he died.

a heart attack. He observed what he considered as Mr. Vanderford's shortness of breath and other symptoms as he walked out of the church and said he died from a lack of blood flow. His opinion was that Mr. Vanderford's heart attack could have occurred at any time, but he just happened to be at work.

*The Trial*

During the trial, Ms. Vanderford testified that Mr. Vanderford was in good health before his death. He performed normal work around the house and his work for E.S. Dockery. Although he did suffer headaches and called off work the day before his death due to a headache, he did not have difficulty performing every day and work activities, working around the house, and driving the kids to and from school. The parties relied on their respective expert opinions as to the cause of Mr. Vanderford's death.

Both parties referenced *Mitchell v. Bunge North America*, 2019 TN Wrk. Comp. App. Bd. LEXIS 15 (Apr. 16, 2019), as the proper way to examine this case. Ms. Vanderford argued on behalf of the children that her ex-husband's death was work-related and that both children are dependents. E.S. Dockery disputed whether Bryelynn was a dependent and argued that Mr. Vanderford's death was not compensable.

**Findings of Fact and Conclusions of Law**

Ms. Vanderford on behalf of the children must prove all elements of their claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6).

*Causation*

She must show to a reasonable degree of medical certainty that Mr. Vanderford's death arose primarily out of his employment, meaning that the August 28, 2023 incident contributed more than 50% to his fatal heart attack when considering all causes. Shown to a reasonable degree of medical certainty means that the incident was more likely than not the cause. § 102(12)(A)-(D).

In *Mitchell,* the widow's claim was denied because she failed to prove her husband's fatal heart attack arose primarily out of his employment. *Mitchell*, 2019 TN Wrk. Comp. App. Bd. LEXIS 15 at *26. This case is distinguishable.

The *Mitchell* claimant contended her husband died from physical exertion. But the proof showed the husband died a few minutes after sitting and talking to his coworkers. *Id.* at *19. Conversely, Mr. Vanderford died as he was sweeping up floor adhesive. And the *Mitchell* Court determined that whether the exertion was extraordinary or whether the employee had preexisting conditions did not matter. *Id.* at *16-17. Further, sweeping has been found to be sufficient activity to produce a fatal, compensable heart attack. *Howard*

4

*v. Sterling Plumbing Grp.*, No. W1998-00338-WC-R3-CV, 1999 Tenn. LEXIS 660, at *7-9 (Tenn. Workers' Comp. Panel Dec. 1, 1999).

Thus, the medical proof preponderates in favor of a finding that Mr. Vanderford's heart attack arose primarily out of his employment. Specifically, Dr. Kanagasundram's opinion contains the more probable explanation of what caused his death. *See Sanker v. Nacarato Trucks, Inc*., 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *12 (July 6, 2016). In making that determination, consideration is given to the physicians' qualifications, the circumstances of their examinations, the information available to them, and the importance attached to that information by other experts. *Lentz v. Coca-Cola Consol., Inc*., 2023 TN Wrk. Comp. App. Bd. LEXIS 34, at *10 (July 19, 2023).

The physician's qualifications are equal, as both are cardiologists, but the Court finds Dr. Kanagasundram's evaluation more persuasive. Both were retained for litigation, so the circumstances of evaluation are equal. Likewise, both physicians knew the details of the August incident in context of Mr. Vanderford's preexisting conditions. However, Dr. Kanagasundram also spoke with Ms. Vanderford, and he considered expert treatises in forming his opinion.

Further, Dr. Kanagasundram better explained how Mr. Vanderford's physical activity led to the physiological changes causing his death. He considered other possible causes, including preexisting conditions, and he explained how Mr. Vanderford's work activity before his death was the primary cause.

Dr. Diaz, however, focused on Mr. Vanderford's preexisting condition and assumed that he suffered shortness of breath before his heart attack despite no evidence to support this assumption. Of note, just before Mr. Vanderford ran outside, Dr. Diaz testified that he saw that Mr. Vanderford looked short of breath.[3] Further, Dr. Diaz did not refer to expert treatises to support his testimony. Additionally, Dr. Diaz stated that, with Mr. Vanderford's preexisting condition, anything could have triggered his heart attack; however, he acknowledged that he was sweeping when it occurred.

The facts show that Mr. Vanderford had a normal day just before the accident. He took care of personal matters at home including driving and spending time with family. These facts do not support the contention that he was suffering dizziness, shortness of breath, or chest discomfort. The next day, he was sweeping, had a heart attack, and died. The Court finds that Mr. Vanderford was not suffering a heart attack until after he began sweeping. Afterward, his demeanor and actions changed. He could no longer sweep, fell, struggled to get up, and could hardly walk. The Court further finds that although he had preexisting coronary artery disease, he suffered new symptoms at work, and his death resulted from a heart attack primarily caused by his work activities as Dr. Kanagasundram

---

[3] Both doctors observed this new symptom that no one had mentioned before.

5

determined.

The parties agreed that if the case were compensable, Michah was a dependent child, but they disagreed about Bryelynn. Although not his biological child, she lived in his household and depended on him for care and financial support. He cooked her meals, took her to school, and provided a home for her. She was wholly dependent on him. Children, even if unrelated, are entitled to compensation if actually dependent. *Atkins v. Employers Mut. Ins. Co.*, 347 S.W.2d 49, 50 (Tenn. 1961). The evidence preponderates in favor of a finding that Bryelynn was Mr. Vanderford's actual dependent.

*Calculation of Benefits*

Under section 209(b)(3), death benefits are subject to the maximum total benefit, which is defined as 450 weeks times the state average weekly wage. § 102(13)(D). On August 25, 2023, the state average weekly wage was $1,194, meaning the maximum total benefits in this case is $**537,300**. The parties agreed that Mr. Vanderford earned an average weekly wage of $1,397.42 and a compensation rate of $931.61.

The Court holds that the children should equally share in benefits. Each shall receive $41,456.65 in a lump sum for the period from his death until May 10, 2025. After that date, each shall receive $465.80 per week until they turn 18 years old or 22 years old if they attend post-secondary school under section 50-6-210(e)(11). If one of the children reaches age 18 and declines to attend post-secondary schooling or reaches age 22, then the compensation rate shall increase to $931.61 per week for the remaining child until that child reaches 18 or age 22 if attending post-secondary school.

The children's counsel submitted an affidavit in support of a fee of 20% of the total award, or $**107,460** (20% x $537,300). Under section 226(a)(2)(B), the Court finds the fee is justified under Supreme Court Rule 8, RPC 1.5 based on: the time and labor involved; the difficulty of the questions; the skill required to litigate the case; the customary fee for workers' compensation cases; the amount of benefits at issue; and the results obtained.

After payment of the accrued benefits and deduction of attorney's fees, the remaining balance equals $**347,126.30**. The children shall receive that amount in weekly payments of $931.61 subject to section 210(e) as mentioned above.

E.S. Dockery's attorney also submitted an affidavit about his fee. Based on the same criteria above, the fee is approved.

**IT IS, THEREFORE, ORDERED** as follows:

1. E.S. Dockery shall pay a total award of death benefits equaling $537,300 under section 209(b)(3) as follows:

- To Ms. Vanderford, accrued benefits of $41,456.65 for each child in a lump sum for a total of $82,913.30, to be used on behalf of the children.
- To Ms. Vanderford for each child, in the amount of $465.80 weekly until they reach 18 or finish school as described above. If one child is no longer eligible for benefits, then the remaining child's weekly benefit shall increase to $931.61.

2. The children's counsel is awarded an attorney's fee of 20% of the total award or $107,460 in a lump sum. The fee is justified under Tennessee Supreme Court Rule 8, RPC 1.5. E.S. Dockery's counsel's fee is also approved.

3. Under section 239(c)(8) and Tennessee Rules of Civil Procedure 54.04 (2024), E.S. Dockery shall pay Ms. Vanderford's discretionary costs of $4,436.10 itemized as follows:

- Dr. Kanagasundram Deposition Fee--$2,730
- Court reporter for Deputy Poteet's deposition--$325.50
- Court reporter for Bobby Dabbs's deposition--$428.50
- Court reporter for Dr. Kanagasundram's deposition--$487.50
- Court reporter for Dr. Arcot's deposition--$292.00
- Court reporter for Compensation Hearing--$172.60

4. E.S. Dockery shall pay the $150.00 filing fee to the Court Clerk within five business days of this order becoming final under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (2023), and for which execution may issue if necessary.

5. Unless appealed, this order shall become final 30 days after issuance.

6. E.S. Dockery shall file a Statistical Data Form (SD-2) with the Court Clerk within ten business days of the date this order becomes final.

**ENTERED May 13, 2025**.

**Brian K. Addington**

_____
**JUDGE Brian K. Addington**
**Court of Workers' Compensation Claims**

7

## APPENDIX

Exhibits:

1. Employer's First Report of Injury
2. Wage Statement
3. Forensic Examination Report
4. Report of Dr. Arvindh Kanagasundram
5. Investigative Report
6. Deposition of Dr. Arvindh Kanagasundram
7. Deposition of Dr. Claro Diaz
8. Certificate of Death
9. Marriage Certificate
10. Final Decree of Absolute Divorce
11. Certificate of Birth-Michah Vanderford
12. Certificate of Birth-Bryelynn Taylor
13. Notice of Denial
14. Video #A
15. Video # B

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent on May 13, 2025.

| Name | Certified Mail | First Class Mail | Email | Service Sent to: |
|---|---|---|---|---|
| Brad Burnette, Employee's Attorney | | | X | brad@foxlawtn.com andrea@foxlawtn.com |
| Jeff Foster, Employer's Attorney | | | X | jfoster@morganakins.com plunny@morganakins.com |

_____

**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**

8



<u>Right to Appeal:</u>

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   ➤ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   ➤ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties
**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*